IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| XPAYS, INC. </br></br> *Plaintiff*, </br></br> v. </br></br> DOES 1-18. </br></br> *Defendants*. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. TBD </br> ) </br> ) **JURY TRIAL DEMANDED** </br> ) </br> ) </br> ) |

## COMPLAINT

Plaintiff XPays, Inc. ("XPays") brings this action against Does 1 through 18 ("John Doe Defendants") alleging copyright infringement and contributory copyright infringement, and seeking damages and injunctive relief. XPays alleges as follows:

### JURISDICTION AND VENUE

1. This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1400(a). Defendants' true identities are unknown at this time, however Plaintiff has used geolocation technology to determine that, upon information and belief, each Defendant may be found in this State.

3. In addition, this court has personal jurisdiction over Defendants because geolocation technology places all Defendants within this State, many of which, upon information and belief reside in this District. All of the Defendants conspired to and did commit acts of

copyright infringement and contributory copyright infringement statewide and nationwide, including in this State and in this District. Defendants, therefore, should anticipate being haled into court in this State and in this District.

## JOINDER

4. Defendants, whose true identities are unknown at this time, acted in a collective and interdependent manner via the Internet in the unlawful reproduction and distribution of the copyrighted motion picture, "*1 Night in Paris*," also known as "*Home Video*" or "*Paris Hilton Sex Tape*" (hereinafter referred to as "Motion Picture") by means of interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent.

5. This case involves one "swarm" in which numerous Defendants engaged in mass copyright infringement of the Motion Picture. Each Defendant illegally uploaded and shared the Motion Picture within this swarm.

6. Upon information and belief, each Defendant was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing the copyright.

7. By participating in the swarm, each Defendant participated in the same transaction, occurrence, or series of transactions or occurrences as at least the other defendants in the same swarm. In particular, Plaintiff's investigator has downloaded the Motion Picture from each Defendant identified herein. In addition, by participating in the swarm, each Defendant participated in a collective enterprise constituting "shared, overlapping facts."

8. P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers;

2

and 3) transfer exact copies of files from one computer to another via the Internet. The particular P2P protocol at issue in this suit is called "BitTorrent."

9. For example, user John Doe 10 of Missouri initiated his or her infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows, software and adult videos. John Doe 10 then intentionally obtained a torrent file (the "Swarm Sharing Hash File" at issue in this suit, 3B227E4AC8C1BD1EBE795406C1CC1B16F3AFB3FF ("Hash 3B22")) for the Motion Picture from the index and intentionally loaded that torrent file into a computer program designed to read such files.

10. With the torrent file intentionally loaded by John Doe 10, his or her BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of the digital media described in Hash 3B22, namely, the Motion Picture, including with, upon information and belief, other identified John Doe Defendants. The program coordinated the copying of the Motion Picture to John Doe 10's computer from the other users, or peers, sharing the film. As the Motion Picture was copied to John Doe 10's computer piece by piece, these downloaded pieces of the Motion Picture were then immediately available to all other Defendants for those Defendants' uses from John Doe 10's computer.

11. Each of the John Does 1-18 performed the same acts as those described for John Doe 10, in paragraphs 9 and 10. Each of these Defendants also immediately became an uploader, meaning that each Defendant's downloaded pieces were immediately available to other users seeking to obtain the file, without degradation in sound or picture quality. It is in this way that each Defendant simultaneously copied and distributed the Motion Picture. Thus, each

3

participant in the BitTorrent was an uploader (distributor) and a downloader (copier) of the illegally transferred file. Here, upon information and belief many members of the swarm at issue downloaded and uploaded portions of the Motion Picture to each other.

12. This interactive, simultaneous data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file. Thus, after a successful download of a piece, the piece is made available to all other users.

13. Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

14. Essentially, because of the nature of the swarm uploads and downloads as described above, every John Doe infringer, in concert with its John Doe swarm members, is simultaneously allowing others to steal (download from the swarm) the copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. This illegal simultaneous data-sharing swarm is performed because each John Doe acts in an interactive manner with other John Does, including with, upon information and belief, other identified John Doe defendants, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action. Thus, there is a significant amount of infringement in this District, and a significant transmission of infringing materials to and from this District.

15. In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.

16. Upon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange is responsible for helping swarm members find more users that share the same data. Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

17. Upon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and Defendants by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

18. The torrent swarm in this case is not an actual entity, but is rather made up of numerous individuals, acting in concert with each other, to achieve the common goal of infringing upon the copyright.

## PARTIES

19. Plaintiff is a Delaware corporation located at 4630 Geary Boulevard, Suite 101, San Francisco, CA 94118, that is the owner of rights in the valid registered copyright for the Motion Picture.

20. Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected within a swarm for the sharing of unique files. The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).

21. This hash file provides access to an unauthorized copy of the copyrighted Motion Picture.

22. Defendants' infringements allow them and others to unlawfully obtain and distribute unauthorized copies of the Motion Picture. The Motion Picture is currently offered for sale on at least on these websites:

http://www.adultdvd.com/dvd.html?id=44738

http://www.gamelink.com/display_product.jhtml?id=206574.

23. Each time a Defendant unlawfully distributes a free copy of the copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even one unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its rights in its Motion Picture.

24. Despite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendants by name at this time. Thus, the true names and

capacities, whether individual, corporate, associate or otherwise, of John Doe Defendants 1-18 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.

25. Each Defendant is known to Plaintiff by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed. This information is provided in the attached Exhibit A. In addition, and as provided in Exhibit A, Plaintiff has learned the ISP for each Defendant, the torrent file copied and distributed by each Defendant, the BitTorrent client application utilized by each Defendant, and the location of most Defendants (by state) at the time of download as determined by geolocation technology.

26. Plaintiff believes that information obtained in discovery will lead to the identification of each John Doe Defendant's true name and permit the Plaintiff to amend this Complaint to state the same. Specifically, Plaintiff intends to subpoena the ISPs that issued the John Doe Defendants' IP addresses in order to learn the identity of the account holders for the IP addresses.

27. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants, since monitoring of online infringement of the Motion Picture is ongoing.

## STATEMENT OF FACTS

### THE COPYRIGHT

28. Plaintiff is an owner of rights under United States copyright law with respect to the Motion Picture.

29. The Motion Picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

30.     The copyright in the Motion Picture was originally registered by Richard Salomon, was entitled "*Home Video*" and displayed Copyright Registration Number PAu278223 ("the '223 Copyright"). See Exhibit B, Certificate of Registration.

31.     Richard Salomon granted a license, including the rights to market, reproduce, and distribute the Motion Picture, to James Salomon. See Exhibit C, Exclusive Licensing Agreement.

32.     Richard Salomon and James Salomon later executed an additional agreement that referenced the Exclusive Licensing Agreement and the unsigned Assignment of Litigation Claims. See Exhibit C; see also Exhibit D, Assignment of Litigation Claims. This "Assignment of Copyrights and Clarification of Litigation Rights" clarified the rights assigned to James to include the protection and enforcement of rights to commercially exploit and profit from the video on the Internet. See Exhibit E, Assignment of Copyrights and Clarification of Litigation Rights.

33.     James Salomon proceeded to assign his rights in the Motion Picture to Merlin Designs Limited, including the rights to pursue copyright protection and enforcement. See Exhibit F, Copyright Assignment from Jim Salomon to Merlin Designs Limited.

34.     Merlin Designs Limited since assigned rights in the Motion Picture to Plaintiff, including the rights to pursue copyright protection and enforcement. See Exhibit G, Copyright Assignment from Merlin Designs Limited to X-Pays, Inc., Certificate of Recordation.

35.     Under the Copyright Act and by assignment, Plaintiff possesses rights to enforce the copyrighted work through litigation.

36.     Defendants had notice that Motion Picture is protected by copyright. At least, the Motion Picture DVD displays a copyright notice stating "© 2004."

## COPYRIGHT INFRINGEMENT AND BITTORRENT

37. BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the Internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users to download and upload from each other simultaneously. The process works as follows:

38. Users intentionally download a small program that they install on their computers – the BitTorrent "client" application. The BitTorrent client is the user's interface during the downloading/uploading process. There are many different BitTorrent clients, all of which are readily available on the Internet for free.

39. BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

40. A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small torrent files known as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

41. The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the IP addresses of

9

other users who are sharing the media file identified by the unique info-hash, as well as specifics about the media file.

42. A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

43. Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

44. Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

45. The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to

share a torrent file with a torrent swarm. The original file, in this is Hash 3B22, which provides access to the copyrighted Motion Picture.

46. Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of the copyrighted Motion Picture on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Motion Picture when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Motion Picture by exchanging the pieces of the Motion Picture that each one has.

47. Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

48. This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is

automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm. Because of the nature of the collective swarm, every infringer is – and by necessity all infringers together are – simultaneously both stealing the copyrighted material and redistributing it.

49. Plaintiff has recorded each Defendant identified herein actually publishing the Motion Picture via BitTorrent, as Plaintiff's investigator has downloaded the Motion Picture from each Defendant identified herein.

50. At least, the Motion Picture DVD displays a copyright notice stating "© 2004."

51. At various times, Plaintiff discovered and documented the copyrighted Motion Picture being publicly distributed by Does 1-18 by and through the BitTorrent network.

52. Defendants, without authorization, copied and distributed the audiovisual Motion Picture owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

DEFENDANTS ARE MEMBERS OF A SINGLE BITTORRENT SWARM

53. Defendants are peer members who have each participated in one P2P network swarm that was utilized to unlawfully infringe upon rights in the copyrighted Motion Picture without permission.

54. Each Defendant initiated his or her infringement by searching for and obtaining a torrent file containing information sufficient to locate and download the copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such file.

55. Each Defendant is a member of a single swarm. Exhibit A.

56. Each John Doe Defendant owns or otherwise has control of a different computer collectively connected to the Internet via an IP address that contained – or possibly still contains

– a torrent file identifying the copyrighted Motion Picture. Each computer also contained or still contains the copyrighted Motion Picture, which was downloaded using the information encoded in the torrent file.

57. All of the Defendants republished and duplicated the Motion Picture in an effort to deprive the Plaintiff of its rights in the Motion Picture under the Copyright Act.

58. Although not required to do so, Plaintiff's representative have sent numerous Google Digital Millennium Copyright Act "take down" forms regarding its Motion Picture. See, e.g., Exhibit H. These forms were sent out to prevent BitTorrent websites from allowing future copyright infringements of the Motion Picture.

59. Despite these letters, Plaintiff believes that additional defendants will continue to infringe its copyright, and therefore may need to be added to this action.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT

60. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 59 as if fully set forth herein.

61. Plaintiff is, and at all relevant times, has been, the holder of rights to enforce the copyrighted work through litigation. The rights held by Plaintiff include the protection and enforcement of rights to commercially exploit and profit from the Motion Picture on the Internet.

62. The copyrighted work was infringed upon by all Defendants.

63. Among the exclusive rights granted to copyright holders under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the public.

64. The Plaintiff alleges that each Defendant, without the permission or consent, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available for distribution to others. In doing so, Defendants have violated Plaintiff's rights. Defendants' actions constitute infringement of the copyright and Plaintiff holds rights in the protection and enforcement of rights to commercially exploit and profit from the video on the Internet. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without permission or consent, distributed the copyrighted Motion Picture *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

65. Each Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

66. As a result of each Defendant's infringement of Plaintiff's rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

67. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing the copyright and ordering that each Defendant destroy all copies of the copyrighted Motion Picture made in violation of Plaintiff's rights in the copyright.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

68. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69. Plaintiff is, and at all relevant times, has been, the holder of rights to enforce the copyrighted work through litigation. The rights held by Plaintiff include the protection and enforcement of rights to commercially exploit and profit from the Motion Picture on the Internet.

70. The copyrighted work was infringed upon by all Defendants.

71. The Plaintiff alleges that each Defendant, without the permission or consent, has participated in a BitTorrent swarm directed at making the Motion Picture available for distribution to himself or herself as well as others, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available to others. Defendants' actions constitute infringement of the copyright and Plaintiff holds rights in the protection and enforcement of rights to commercially exploit and profit from the video on the Internet. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without permission or consent, distributed the copyrighted Motion Picture *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

72. By participating in the BitTorrent swarm with other Defendants, each Defendant induced, caused or materially contributed to the infringement of the copyright and exclusive rights under copyright by other Defendants and other swarm members. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without the permission or consent, contributed to the infringement of the copyright by other Defendants and other swarm members.

15

73. Each Defendant's acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

74. As a result of each Defendant's contributory infringement of Plaintiff's rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

75. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further contributing to the infringement of the copyright and ordering that each Defendant destroy all copies of the copyrighted motion picture made in violation of Plaintiff's rights to the copyright.

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

A. For entry of preliminary and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture and any motion picture, whether now in existence or later created, that is owned, licensed to, or controlled by Plaintiff ("the Motion Picture"), including without limitation by using the Internet to reproduce or copy the Motion Picture, to distribute the Motion Picture, or to make the Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all copies of the Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of those downloaded Motion Pictures transferred onto any physical medium or device in each Defendant's possession, custody, or control.

B. For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff.

C. For Plaintiff's costs.

D. For Plaintiff's reasonable attorney's fees.

E. For such other and further relief as the Court deems proper.

                    Respectfully submitted,
                    PLAINTIFF XPAYS, INC.
                    By its attorneys,
                    SIMMONS BROWDER GIANARIS
                        ANGELIDES & BARNERD LLC

Dated: August 7, 2012          By: */s/ Paul A. Lesko*
                                         Paul A. Lesko – E.D. Mo. Bar No. 51914
                                         Sarah S. Burns – E.D. Mo. Bar No. 5211019
                                         One Court Street
                                         Alton, IL 62002
                                         (618) 259-2222
                                         (618) 259-2251-*facsimile*
                                         plesko@simmonsfirm.com